UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUN A. ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br><br>Defendants. | Case No. 15-cv-01673-RS (MEJ)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 62 |

## INTRODUCTION

Plaintiff Shaun Anderson ("Plaintiff") and Defendants the County of Contra Costa, Contra Costa Health Services ("CCHS"), Contra Costa County Sheriff David O. Livingston ("Livingston"), Dennis McBride, and Adam Buck (collectively, "Defendants") filed a joint discovery letter concerning Livingston's deposition. Letter, Dkt. No. 62. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

In February 2014, Plaintiff's father, Robert Anderson, was booked into the Martinez Detention Facility (the "Jail"). Compl. ¶ 14. On February 27, 2014, Mr. Anderson was taken to the CCHS-operated Contra Costa County Regional Medical Center (the "Medical Center"), where he "reported chest pain, a painful cough, shortness of breath, yellow sputum with streaks of blood, nausea and a history of serious health problems, including [chronic obstructive pulmonary disease ('COPD')] and asthma." *Id.* (internal quotation marks and edits omitted). Mr. Anderson remained at the Medical Center for seven days and "was diagnosed with community-acquired pneumonia complicated by COPD, chronic kidney disease, Hepatitis C infection, asthma and coronary artery

disease, among other diagnoses." *Id.* On March 6, 2014, the Medical Center discharged Mr. Anderson back to the Jail under the care of the Contra Costa County Sheriff's Office. *Id.* The Medical Center provided "significant discharge medication and medical care instructions (including the provision of Symbicort, an inhaler used for the treatment of COPD)." *Id.*

Plaintiff alleges the Jail failed to provide Mr. Anderson with Symbicort per the Medical Center's instructions. *Id.* ¶ 15. Mr. Anderson returned to the Medical Center on March 17, 2014, where he reported chest pain and significant pain when he breathed deeply. *Id.* The Medical Center discharged Mr. Anderson the same day, noted "he was not likely to get his Symbicort[,]" and instructed Mr. Anderson to follow up with the Jail's physician. *Id.* (internal quotation marks omitted).

Plaintiff alleges the Jail's medical personnel still did not provide Mr. Anderson with the necessary medication and did not monitor his condition. On March 23, 2014, Mr. Anderson was taken to the Medical Center after he fainted in his cell. *Id.* ¶ 16. Medical personnel determined that he fainted due to hypotension and that COPD exacerbation caused his chest pain. *Id.* Lab results indicated an elevated white blood cell count. *Id.* Medical Center personnel did not determine whether Mr. Anderson continued to suffer from a staph infection and/or pneumonia, but discharged Mr. Anderson to the Jail on March 24, 2014. *Id.*

Mr. Anderson was rushed to the Medical Center on March 30, 2014, suffering from hypotension and complaining of chest pain. *Id.* ¶ 19. Mr. Anderson reported the chest pain started a few days before, while he was at the Jail. *Id.* Mr. Anderson was diagnosed with septic shock due to severe pneumonia. *Id.* He died at the Medical Center on March 31, 2014. *Id.*

Plaintiff initiated this action on April 13, 2015. *See id.* He asserts three claims: (1) 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments; (2) negligence/wrongful death; and (3) California Government Code section 845.6. *Id.* ¶¶ 26-57. Plaintiff sues Livingston in his individual capacity under a theory of supervisory liability and his official capacity under a theory of municipal liability. *Id.* ¶ 7; Letter at 3.

On March 8, 2016, Plaintiff requested dates for several depositions, including Livingston's. Letter at 2. On September 19, 2016, Defendants objected to producing Livingston

2

on the ground that Livingston is an "apex" employee or a high-ranking official. *Id.* Defendants offered to allow Plaintiff to depose a Rule 30(b)(6) witness in lieu of Livingston. *Id.* at 3. Two days later, Plaintiff noticed Livingston's deposition for October 19, 2016. *Id.* at 2. Defendants maintained their objection. *Id.* at 3.

Plaintiff filed a Motion to Compel Livingston's deposition on November 16, 2016. *See* Mot., Dkt. No. 53. The presiding judge in this matter, the Honorable Richard Seeborg, referred the Motion and all discovery-related matters to the undersigned on December 2, 2016. Dkt. No. 55. On December 5, 2016, the undersigned denied the Motion without prejudice pending the filing of a joint letter. Dkt. No. 56. The parties filed this Letter on March 6, 2017.[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor

---

[1] Defendants urge the Court to consider their Opposition to Plaintiff's Motion to Compel in addition to the arguments they set forth in the Letter. Letter at 2; *see* Opp'n at Dkt. No. 54. The Court declines to consider materials outside of this Letter, which the parties submitted pursuant to the Court's Discovery Standing Order.

their efforts to the needs of th[e] case").

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

## DISCUSSION

"'When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), the court may exercise its discretion under the federal rules to limit discovery.'" *Somers v. Dig. Realty Tr. Inc.*, 2016 WL 7157505, at *1 (N.D. Cal. Dec. 8, 2016) (quoting *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011)). Discretion is necessary because apex depositions "create[] a tremendous potential for abuse or harassment." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (internal quotation marks omitted).

Courts may limit discovery after considering "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* (quoting *In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011)). Limitations are appropriate "where the information sought can be obtained through less intrusive discovery methods, such as by interrogatory or depositions of lower-level employees with more direct knowledge of the facts at issue." *Somers*, 2016 WL 7157505, at *1. Courts generally require extraordinary circumstances before prohibiting a deposition in its entirety. *Apple Inc.*, 282 F.R.D. at 263; *Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012). "The apex doctrine does not protect high-ranking officials from all depositions." *Myles v. Cty. of San Diego*, 2016 WL 4366543, at *3 (S.D. Cal. Aug. 15, 2016), *reconsideration denied*, 2016 WL 6070328 (S.D. Cal. Oct. 17, 2016). "When a witness has personal knowledge of facts relevant to the lawsuit, even a

4

1  corporate president or CEO is subject to deposition." *Powertech Tech., Inc. v. Tessera, Inc.*, 2013
2  WL 3884254, at *1 (N.D. Cal. July 26, 2013) (internal quotation marks omitted).

### A.    Application to the Case at Bar

Plaintiff does not allege Livingston has unique knowledge of any facts relating to Mr. Anderson's death; he instead seeks to depose Livingston about the Jail's health care policies and practices and his state of mind concerning risks of harm to inmates like Mr. Anderson. Letter at 4. Defendants argue "Plaintiff has failed to . . . carry his Apex doctrine burden." *Id.* at 5; *see id.* at 6.

Some courts have required the party seeking the deposition to prove that the deponent has unique personal knowledge and that it has exhausted all less intrusive discovery methods. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 10967617, at *1 (N.D. Cal. Aug. 1, 2011) ("[C]ourts have required that the party seeking to depose an apex executive demonstrate that he possesses some 'unique personal knowledge' about the case."); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *4 (N.D. Cal. Jan. 25, 2007) (declining to order depositions of apex employees where party seeking deposition failed to show deponents possessed unique personal knowledge). Several courts, however, have rejected this approach. *See Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) ("Even when the apex doctrine is at issue, however, the burden remains on the party seeking to avoid the deposition." (internal quotation marks omitted)); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *2 (N.D. Cal. Mar. 6, 2014) ("[C]ourts have rejected burden-shifting for . . . 'apex' depositions, holding that the burden under the apex principle is supplied by the general rule applicable to a party that seeks to avoid discovery in general. [ ] In other words, the party opposing discovery . . . bears the burden of showing that the deposition should not be allowed." (internal citation, edits, and quotation marks omitted)); *Powertech Tech., Inc.*, 2013 WL 3884254, at *1 ("[U]nder Rule 26, . . . the person seeking to avoid discovery[] bears the burden of showing that good cause exists to prevent the deposition. The burden under the apex principle is supplied by the general rule applicable to a party that seeks to avoid discovery in general." (internal quotation marks omitted)); *Apple Inc.*, 282 F.R.D. at 263 ("[A] party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." (internal quotation marks omitted)).

1 Livingston is an apex employee or high-ranking official, to whom the apex doctrine
2 applies. *See Myles*, 2016 WL 4366543, at *4 (finding sheriff subject to the apex doctrine where
3 plaintiff acknowledged sheriff was the sheriff's department's chief policy maker and highest
4 ranking government officer); *K.C.R. v. Cty. of L.A.*, 2014 WL 3434257, at *6 (C.D. Cal. July 11,
5 2014) ("[A]mple authority since [2005] supports the proposition that a sheriff is a high-ranking
6 government official entitled to protection." (collecting cases)). Livingston's state of mind is
7 relevant to Plaintiff's claims, but he is not an appropriate witness for general information
8 regarding the Jail's policies and practices. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1071 (9th
9 Cir. 2012) ("*Iqbal* makes crystal clear that constitutional tort claims against supervisory
10 defendants turn on the requirements of the particular claim—and, more specifically, on the state of
11 mind required by the particular claim—not on a generally applicable concept of supervisory
12 liability."). Plaintiff cannot depose Livingston on such topics of general application. There is no
13 evidence that Plaintiff has conducted discovery on what health care policies and practices were or
14 were not followed by Jail personnel. The Court accordingly DENIES Plaintiff's request to depose
15 Livingston without prejudice. Plaintiff shall first depose a Rule 30(b)(6) witness regarding the
16 Jail's policies and practices, and any other relevant topics, then meet and confer with Defendants
17 about the necessity and scope of Livingston's deposition. If the parties are unable to reach
18 agreement, they may file a joint letter outlining the scope of their disagreement.

### B.   Protective Order

Defendants also request a protective order barring Plaintiff from deposing Sheriff Livingston. Letter at 7. Defendants fail to show good cause for their request: they do not explain how specific prejudice or harm will result absent a protective order. *See In re Transpacific*, 2014 WL 939287, at *3. In light of the Court's decision to deny Plaintiff's request to depose Livingston without prejudice, the Court also DENIES Defendants' request for a protective order.

**IT IS SO ORDERED.**

Dated: March 9, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

6